HARRY E. WINDSOR *et al.*, Harbor Commissioners *vs.*
ERNEST COGGESHALL *et al.*

DECEMBER 11, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

PER CURIAM. This is an appeal from an interlocutory decree which orders the respondents to take up and remove a certain fish trap and restrains them from erecting and maintaining said fish trap in a certain area described in the bill of complaint.

Chapter 1167 of Public Laws, 1928, makes it unlawful for any person, without first obtaining a license, to erect or maintain any fish trap within certain limits defined in the act. The harbor commissioners are authorized to issue licenses to persons desiring to erect or maintain fish traps under certain conditions defined in said act.

It is admitted that the respondents have erected a fish trap within the area defined in the act without first obtaining a license so to do. The respondents contend that by virtue of Section 17 of Article I of the Constitution of the State, the General Assembly is without power to limit or restrict their rights to fish in the public waters of the State. Said section 17 reads as follows: "The people shall continue to enjoy and freely exercise all the rights of fishery, and the privileges of the shore, to which they have been heretofore entitled under the charter and usages of this State. But

no new right is intended to be granted, nor any existing right impaired, by this declaration."

The interpretation which has uniformly been given to said section is that given it in *State* v. *Cozzens*, 2 R. I. 561, decided in 1850, where the court, speaking through GREENE, C. J., said: "We are of the opinion that the Declaration of Rights and Privileges, contained in the seventeenth section of the first article of the Constitution, was intended to be carried into effect to secure to the whole people the benefit of the constitutional declaration, and being necessary for that purpose."

In *Payne & Butler* v. *Providence Gas Co.*, 31 R. I. 295, the court at page 327—after citing with approval *State* v. *Cozzens*, *supra*,—said: "Therefore the whole subject of fisheries, floating and shell-fish, and all kinds of shell-fish, whether oysters, clams, quahaugs, mussels, scallops, lobsters, crabs, or fiddlers, or however they may be known and designated and wherever situate within the public domain of the State of Rhode Island, are under the fostering care of the General Assembly. It is for the legislature to make such laws, regulating and governing the subject of lobster-culture, oyster-culture, clam-culture, or any other kind of pisci-culture, as they may deem expedient. They may regulate the public or private fisheries. They may even prohibit free fishing for a time and for such times as in their judgment it is for the best interest of the State so to do. They may withhold from the public use such natural oyster beds, clam beds, scallop beds or other fish beds as they may deem desirable. They may make a close time within which no person may take shell-fish or other fish, and generally they have complete dominion over fisheries and fish as well as all kinds of game. We find no limitation, in the constitution of the power of the General Assembly to legislate in this regard, and they may delegate the administration of their regulations to such officers or boards as they may see fit." See also *State* v. *Kofines*, 33 R. I. 211. These cases leave the power of the General Assembly to regulate the

fisheries in the public waters of the State no longer open to question.

Defendants in their brief allude to unfair and arbitrary acts on the part of the complainants, but the record before us does not disclose any unfair or arbitrary treatment of the respondents. The situation in which the respondents find themselves in respect to their position as fishermen appears to be due to a stubborn adherence to their belief that the General Assembly has not the power to regulate, limit or restrain fishing in the public waters of the State. That this belief is groundless is quite evident from the cases heretofore cited which confirm in no uncertain terms the power in the General Assembly which the respondents challenge.

The respondents also contend that Chapter 1167 as amended is unconstitutional because it confers jurisdiction in equity upon the Superior Court to restrain violations of its provisions and thus deprives them of their right to a trial by a jury. As to this contention it is sufficient to say that the General Assembly, in the exercise of its power of regulation of the fisheries in the public waters of the State, has also the power to authorize enforcement of its regulation either by penal statute or by the process of injunction. *State Board of Health* v. *Diamond Mills Paper Co.*, 63 N. J. Eq. 111.

The appeal of the respondents is denied, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*John J. Cooney, Third Asst. Attorney General*, for complainants.

*Ernest and Lester H. Coggeshall, pro se.*